**PENNYSAVERS OIL COMPANY of Texas,**
**Appellant,**

v.

**STATE of Texas, Appellee.**

No. 13584.

Court of Civil Appeals of Texas.

San Antonio.

March 30, 1960.

Rehearing Denied April 27, 1960.

J. R. Sorrell, Tom M. Pogue, Richard B. Stone, Corpus Christi, for appellant.

Franklin L. Smith, County Atty., C. Edwin Prichard, Jr., Asst. County Atty., Corpus Christi, for appellee.

MURRAY, Chief Justice.

This suit was instituted by the State of Texas against Pennysavers Oil Company of Texas, seeking to condemn a small portion of land (0.157 acres), together with defendant's access rights to an "access controlled highway" or Freeway to be constructed. U. S. Highway No. 77, also known as Texas State Highway No. 9, was, prior to 1958, a conventional, two-way designated highway, leading from Corpus Christi to San Antonio, and running through the Town of Calallen, Nueces County, Texas.

Pennysavers Oil Company was the owner of 3.66 acres of land, lying just west of Highway 77 in Calallen, on which was located a filling station which it operated. The parcel of land to be condemned was not near the filling station, and its taking in no way interfered with the operation of the filling station or its access to the old conventional highway. The price of this parcel of land was agreed upon, which was satisfactory in every way to both parties, and its condemnation is in no way involved in this appeal. The entire controversy here concerns the right of Pennysavers Company to recover for its alleged loss of access to this new access controlled highway.

The jury found, in effect, that appellant's right of access to the new access controlled highway was of no value and allowed nothing for its taking. Judgment was accordingly rendered, and Pennysavers Oil Company of Texas has prosecuted this appeal.

The record shows that prior to the construction of the Freeway appellant's filling station was a very prosperous business, but after its construction the filling station became a losing proposition and it was finally closed. This, however, does not establish the fact that the State and County must pay for the loss.

Before the construction of the Freeway, appellant enjoyed full and complete access from its property to Highway 77, but now

has only limited access to the Freeway, still known as Highway 77. The paved highway in front of appellant's station is still there and appellant has ·full access to it, but instead of its being a main highway, leading from the City of Corpus Christi to the City of San Antonio, it is now only a frontage road furnishing access to the Freeway. The road is now 32 feet wide, and in front of appellant's station is one and 9/10 feet higher than it formerly was, but this is not the basis of appellant's complaint. Appellant's real complaint is that originally people traveling on Highway 77 had free access to its filling station, and people driving either north or south could drive with ease into its station to buy gas, oil and other articles, while, due to the circuitous route which they must now take in order to drive into the station and get back on the Freeway, such people have ceased to trade at its station and its filling station business has been ruined.

In building the Freeway the State and County acquired land on the east side of old Highway 77, opposite from appellant's station, and the Freeway traffic lanes now lie east of the old conventional highway, and still further east is another frontage or land service road that furnishes limited access to residents on the east side of the Freeway traffic lanes. In other words, the one-time conventional two-lane highway that passed in front of appellant's filling station is now a four-lane Freeway, with a frontage or land service road lying on each side of the Freeway lanes. These frontage roads furnish an indirect, limited, and sometimes circuitous access to and from the Freeway.

██ This brings us to the question of whether appellant was in the first place entitled to complete access to the Freeway. Art. 6674w et seq., Vernon's Ann.Civ.Stats., authorize the Highway Commission of this State to build controlled access highways, and to exercise the right of eminent domain to secure land for their construction, or to convert existing conventional highways into Freeways. Controlled access highways are built primarily for the benefit of through traffic, while conventional highways are built, among other things, to serve abutting landowners so that they may have access to a highway for travel. If a Freeway is built in such a manner as to deny a landowner any access to such highway, where he theretofore had full access to a conventional highway, then unquestionably his right of access has been taken from him, and the taker must pay him for his property right which it has taken from him. Grapotte v. Adams, 130 Tex. 587, 111 S.W.2d 690; State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783. This loss is generally shown by the before and after market value of the property.

██ But, as here, where all that has been done is that the conventional highway upon which appellant's property abuts has been reduced to a frontal or server road, furnishing limited access to the Freeway, which has been constructed just beyond the old conventional road, appellant has not lost its full right of access to the new Freeway. It simply never did have anything but a limited right of access to such Freeway, and that is what it now has. State, By and Through State Highway Commission v. Burk (Oregon), supra; Art. 6674w, supra.

There can be no doubt in this case that appellant has lost the trade it one time enjoyed, with people traveling the conventional Highway 77, for now access to such through traffic has been taken from it by the construction of a new controlled access Freeway, which, together with its one-way lane, barriers and police regulations, makes it difficult for people traveling on this Freeway to reach appellant's filling station in order to trade with it.

The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking

regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access. City of San Antonio v. Pigeonhole Parking of Texas, Inc., Tex., 311 S.W.2d 218; Grapotte v. Adams, supra; State, By and Through State Highway Commission v. Burk (Oregon) supra.

If the State had decided to build this Freeway a block or a mile from appellant's property, it would likewise have lost its trade, but no abutting property owner has a vested interest in the traffic that passes in front of his property, and if this traffic is diverted by the State building a road at another place, and the traveling public prefer to travel the new road and abandon the old road, the State cannot be held liable for any loss of trade suffered by an abutting landowner on the old abandoned road. Marshall v. City of Amarillo, Tex.Civ.App., 302 S.W.2d 943; State v. Parkey, Tex.Civ.App., 295 S.W.2d 457; Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575; State Highway Commission v. Humphreys, Tex.Civ.App., 58 S.W.2d 144; Mosel v. Real, Tex.Civ.App., 49 S.W.2d 475; 134 A.L.R. 134.

Appellant never did have any access right to this new Freeway other than by means of the feeder or limited access roads that are provided for all landowners whose property abutted upon the old conventional highway.

The disposition we are making of this case renders it unnecessary to pass upon other points presented by appellant.

The jury correctly found, in effect, that the State had not damaged appellant by taking from it an access easement that it never had.

The judgment is affirmed.