**CITY OF BEAUMONT et al., Appellants,**

v.

**A. B. MARKS, Appellee.**

**No. 6942.**

Court of Civil Appeals of Texas.

Beaumont.

March 28, 1968.

Rehearings Denied April 24, 1968.

Orgain, Bell & Tucker, Anthony Brocato, City Atty., Beaumont, for appellants.

Weller, Wheelus & Green, Beaumont, for appellee.

Frank Adams, W. G. Walley, Jr., Beaumont, amici curiae.

PARKER, Justice.

A. B. Marks, as plaintiff, sued The City of Beaumont, Texas, The Southern Pacific Company, Missouri Pacific Lines, and Kansas City Southern Railway Company, as defendants, for damages as a result of impairment of reasonable access to property owned by him by virtue of the construction of an overall railroad grade separation program to eliminate crossings of streets by railroad tracks at grade, alleging the same constituted damage to property for public use under Article 1, Section 17, of the Constitution of Texas, Vernon's Ann.

St. No part of Marks' property was physically appropriated by the defendants, City and railroads. Based upon a jury verdict, judgment was entered that the plaintiff recover from the defendants, jointly and severally, the sum of $46,000.00. The parties will be designated as in the trial court.

Appendix "A" below shows the situation before construction of the project and Appendix "B" shows the situation after the construction of the project. To simplify directions herein, it will be considered that Orleans Street runs north and south and Gilbert Street runs east and west.

## APPENDIX "A"

APPENDIX "B"

VIEW OF PARK-ORLEANS UNDERPASS & ENVIRONS, DEPICTING WAYS OF INGRESS TO AND EGRESS FROM A. B. MARKS PROPERTY

Under the facts in this case, this court holds as a matter of law that Marks' access rights have been impaired to such an extent as to constitute damage to his property for a public use under Article 1, Section 17, of the Constitution of Texas. The Supreme Court of Texas views this as a question of law. DuPuy v. City of Waco, 396 S.W.2d 103 (S.Ct.1965); Cf. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053 (1940).

Since September 22, 1944, plaintiff, Marks, has been the owner of a leasehold estate, including building and improvements, situated on Lots 153 and 154 in Block 36 of the town of Beaumont. The term of such lease expires April 22, 2021 A.D. In the plat of the town of Beaumont, Block 36 is bounded on the north by Washington Street, now called Gilbert Street, and on the west by Orleans Street, each street being 60 feet wide. Marks' property is on the northwest corner of Block 36

with a frontage of 120 feet on each street and to the center of each street subject to the rights of the City to the streets. The single track railroad in the center of Gilbert Street, before construction of the project, had been there from sometime prior to 1922, but the record is silent as to the authority therefor. As a part of an overall railroad grade separation program to eliminate crossings of streets by railroad tracks at grade, defendants, acting together, caused two tracks to be placed within an esplanade in Gilbert Street in lieu of the single track previously existing on the same grade as the street. This program will hereinafter be called "the project." The two railroad tracks were at a higher level than the old railroad track and street, protected by a curb so traffic could not cross. A 10-foot wide traffic lane remained between the esplanade and the curb on Marks' property. The extension of Gilbert Street to the west with the double tracks blocked anyone from going north on Orleans Street. The new Gilbert Street traffic lanes were not extended to the west across the underpass between Park and Orleans Streets. Gilbert Street had been a through street east and west with two-way traffic before construction of the project, having no obstruction and could be crossed by walking or driving. Orleans Street had been a through street with one-way traffic to the north. After the construction of the project, vehicular traffic continued to reach plaintiff's property through a 14-foot bottleneck near Milam Street to the south instead of the 60-foot street theretofore existing. Now, traffic on the remains of old Orleans, after arriving at Gilbert Street, cannot proceed north, but must proceed to the east on the 10-foot pavement on the south side of Gilbert to Pearl Street, a main thoroughfare for south-bound traffic, or another block to Main Street, a main street for north-bound and south-bound traffic.

The construction of the project began January 16, 1964. At Milam Street, traffic on Orleans was diverted to the west by a new Orleans Street with a change in grade for an underpass below the railroad tracks on Gilbert Street.

■ The property of Marks is damaged by the substantial reduction in width and utility of *both* Gilbert Street and Orleans Street, the blocking of traffic on old Orleans Street from proceeding north of Gilbert, together with the construction of the underpass on adjacent blocks to the west of old Orleans Street, the construction of the new Orleans Street, including the underpass, with diversion of traffic from old Orleans Street to the new Orleans Street and with the entrance from the south on old Orleans Street reduced to a width of 14 feet, and deprived Marks of reasonable access which entitles him to invoke the provision of the Constitution requiring the payment of compensation when property is damaged for a public use. The City and the railroads in this case contend that the trial court erred in permitting the jury to consider or awarding any monetary damage to plaintiff by reason of the construction of the underpass, asserting all of the damages alleged and proved in connection therewith are damnum absque injuria. Such contentions upon very similar facts were rejected in DuPuy v. City of Waco, supra. This court also rejects such contentions.

Considering the construction of the underpass, the same principle announced by the Supreme Court with reference to the viaduct in the DuPuy case is applicable in this case to the underpass. The Supreme Court held at page 107 of 396 S.W.2d of DuPuy v. City of Waco, supra:

"Moreover, the viaduct was constructed for a public use, the necessary consequence of which was the causing of a property loss to Petitioner not common to the general public. These elements are generally considered to be supportive of special damages in law whether or not termed in exercise of the power of eminent domain."

And at page 108, the Supreme Court repeats the rule:

"It is settled that a direct physical invasion of property is not required under the present provisions of Article 1, Section 17, of the Constitution of Texas to entitle an owner to compensation."

State highway rerouting cases, including Holbrook v. State, Tex.Civ.App., 355 S.W.2d 235 (writ ref. n. r. e.), were not considered applicable in the DuPuy case and are not applicable to this case.

Defendants contend that the Supreme Court in DuPuy v. City of Waco, supra, held that only an absolute cul-de-sac situation must exist in order for plaintiff to recover. We construe this case as holding that the owner is deemed to have suffered an injury not common to the public when the construction of the project has deprived the owner of reasonable access entitling the owner to payment of compensation when the property is damaged for public use. Without quoting from the numerous decisions of this state analysed in DuPuy v. City of Waco, supra, the court clearly states:

(1) "It is not enough that DuPuy can get to the system of public roads and the traveling public can get to his building. We are clear in the view that the construction of the viaduct has deprived DuPuy of reasonable access which entitles him to invoke the provision of the Constitution requiring the payment of compensation when property is damaged for a public use."

(2) "and that our decisions permit recovery by the citizen for damages consequent upon changing street and highway grades."

There was a change of the street grades in both Orleans and Gilbert Streets. This is a basis for permitting recovery by Marks. The intersection of Orleans and Gilbert Streets was abandoned, vacated and closed for street purposes by an ordinance of the City of Beaumont. Orleans Street, in its function as a street, was moved in excess of 120 feet to the west and depressed in grade approximately 20 feet where the railroad tracks ran above it. Gilbert Street became a 10-foot alleyway. Article 1, Section 17, of the Constitution of Texas provides:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

Considering the question of interference with access under our Constitution, providing for payment in the event of "taking" or "damage", the statement in the text 2 Nichols, Eminent Domain, 571, Section 6.4442 applies in Texas:

"It is accordingly well settled, in states in which such provisions are enforced, that when the means of ingress and egress of premises abutting upon a public street to and from the street are physically obstructed by the manner in which the street is used, altered, or improved under legislative authority, whether the new use is or is not a legitimate street use, or whether the abutter or the public owns the fee, the owner of such premises is entitled to compensation so far as such impairment of access depreciates the market value of his property."

We do not, therefore, consider it necessary to pass upon the nature of the title owned by defendants in Gilbert Street, particularly that of the City of Beaumont.

Defendants' ninth and tenth points of error are as follows:

## "NINTH POINT OF ERROR

The court erred in overruling defendants' objections and in allowing in evidence to be considered by the jury the entire "Primary Agreement", including the paragraphs showing that the total net cost of the project amounted to over

$10,000,000, and the paragraphs relating to the cost of right of way and setting aside funds for the payment of property damage, attorneys fees and witness fees, and paragraphs dealing with provisions for participation of the parties in the total net cost and the percentage to be borne by each."

## "TENTH POINT OF ERROR

The court committed error in overruling defendants' objection to the argument of plaintiff's attorney, the Honorable Edward Green, and in allowing such attorney over defendants' objection to read to the jury various paragraphs in the "Primary Agreement", which had been received in evidence over defendants' objection, and to argue to the jury that defendants were operating under a $10,-928,000 agreement, and to allow such attorney over such objection to direct the jury's attention to the provisions in said "Primary Agreement" with respect to the source and allocation of funds, and the provisions for payment of court costs, witness and attorneys fees."

■ It was error to admit in evidence such portions of the "Primary Agreement" and to argue to the jury the provisions in the Primary Agreement with respect to the source and allocation of funds and the provisions for payment of court costs and witness and attorneys fees. The question remaining to be determined is whether or not such errors were harmless errors. The testimony of the various witnesses as to the market value of Marks' property before construction of the project and after construction of the project are tabulated below:

| Witness for | Name of Witness | Before | After |
|---|---|---|---|
| Plaintiff | Hall | $55,302.00 | $ 6,892.00 |
| Defendants | Terry | 35,500.00 | 9,000.00 |
| Plaintiff | Marks | 80,000.00 | $10,000.00 |
| AVERAGE VALUES | | 56,934.00 | 8,630.67 |
| JURY VERDICT | | 55,000.00 | 9,000.00 |

■ The Primary Agreement was passed by the City Council of the City of Beaumont on the first day of July, 1965. It was executed by City of Beaumont Southern Pacific Company, The Kansas City Southern Railway Company, Missouri Pacific Railway Company and Gulf, Colorado and Santa Fe Railway Company. All of the parties to the Primary Agreement were parties defendant to the instant suit other than Gulf, Colorado and Santa Fe Railway Company. The latter railroad company did not participate in this particular grade separation and location of tracks and so forth. Throughout the trial, the railroad companies before the court contended that if there was any liability on the part of defendants to Marks, the liability was the City's, not the railroads'. We do not have to construe what the liability is as among the defendants. We do hold that under the Primary Agreement in connection with the facts of this case, that the defendants are each jointly and severally liable to the plaintiff Marks for the damages occasioned by the defendants in the construction of the project. This Primary Agreement covers many changes in location and removal of railroad tracks, construction of additional railroad tracks and underpasses. It was in consideration of "benefits and advantages accruing to City and the Carriers and in recognition of the public necessity and convenience, City and the Carriers mutually covenant and agree to and with each other to undertake said Project, all as hereinafter described and under terms and conditions as in this Agreement set forth and agreed upon." In this opinion we have used the term project as to a very

small portion of what is termed the project in the Primary Agreement. This Primary Agreement is the controlling document among the defendants covering the work carried out in the streets abutting the Marks property. City of Beaumont is a home-rule city. It is by this Primary Agreement that the City of Beaumont consented to the use of certain streets, including Gilbert Street, and issued a franchise to the defendant railroads for additional tracks, changed the grade of streets and railway tracks and denied reasonable access to Marks' property. By this ordinance the construction of all projects, including the project under consideration, was legally prosecuted to conclusion. Tex.Const. art. X, sec. 7; Mayor, Etc. of City of Houston v. Houston City St. Ry. Co., 83 Tex. 548, 19 S.W. 127 (Tex.Sup.1892); Tex.Rev.Civ.Stat.Ann. art. 6330 (1926); Galveston & W. Ry. Co. v. City of Galveston, 90 Tex. 398, 39 S.W. 96 (Tex.Sup. 1897); Kansas City, M. & O. Ry. Co. of Texas v. City of Sweetwater, 104 Tex. 329, 137 S.W. 1117 (Tex.Sup.1911); Tex.Rev. Civ.Stat.Ann. art. 1175, sec. 12 (1963); Tex.Rev.Civ.Stat.Ann. art. 1181 (1963); Art. XV, sec. 147 of the Charter of the City of Beaumont; Barrington v. Cokinos, 161 Tex. 136, 338 S.W.2d 133 (1960); 339 S.W.2d 330 (Tex.Civ.App.1959). The Primary Agreement: (1) Sets forth the duties and obligations of the parties, and specifies the method by which construction of the project will be carried out, (2) Specifically provides for removal and relocation of the railroad tracks, including the tracks on Gilbert Street in front of the Marks property, (3) provides for supervision of work performed under any construction contract and defines the authority of the consulting engineers, and (4) Provides that contractors will contract not only with City, but with Railroads.

This Primary Agreement, showing the total net cost of the project was expected to be in excess of $10,000,000.00, was not an agreement of some third person to pay for rights-of-way and damages and so forth. From the evidence from witnesses as to the value of Marks' property before and after construction of the project, it does not appear that the jury's answers to these issues reflect prejudice on the part of the jury. The railroads were parties to this suit. The Primary Agreement did not inform the jury that any award made for damages would be paid in whole or in part by a third person not a party to this suit. The Primary Agreement plainly showed many separate projects were to be paid out of these funds. The admission of the Primary Agreement, including the amount of money available, if error, did not amount to such a denial of the rights of the defendants (appellants here) as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the defendants (appellants here) from making a proper presentation of the case to this court. If error, it was harmless error.

Defendants' points of error nine and ten have been disposed of. All other points of error by defendants are overruled.

Judgment of the trial court is affirmed.