**CITY OF BEAUMONT et al., Petitioners,**

v.

**A. B. MARKS, Respondent.**

**No. B–931.**

Supreme Court of Texas.

Feb. 5, 1969.

Rehearing Denied April 30, 1969.

Anthony G. Brocato, Orgain, Bell & Tucker, John G. Tucker, Beaumont, for petitioners.

Weller, Wheelus & Green, Edward H. Green, Beaumont, for respondent.

SMITH, Justice.

The respondent, A. B. Marks, brought this suit in the District Court of Jefferson County, Texas, against the City of Beaumont, Texas, Southern Pacific Company, Missouri Pacific Lines and Kansas City Southern Railway Company, seeking compensation under Article I, § 17, of the Constitution of Texas, Vernon's Ann.St.,[1] for diminution in value to his leasehold interest in real estate. The landowner and a sub-lessee were not made parties. The respondent alleged that such diminution was due to impairment of reasonable access resulting from construction of a railroad grade separation project, which was begun December 31, 1963, and completed in the latter part of June, 1965. Trial was to a jury, which found the value of plaintiff's leasehold before and after construction. These findings resulted in a finding of damages in favor of the respondent against the petitioners for $46,000.00, the difference between such values. The trial court entered judgment accordingly. The Court of Civil Appeals affirmed. 427 S.W.2d 111.

For convenience, the petitioners, the Southern Pacific Company, Missouri Pacific Lines and the Kansas City Southern Railway Company, shall hereafter be referred to as the Railroads, and the petitioner, the City of Beaumont, shall be designated as the City. The respondent, A. B. Marks, shall be referred to as the Plaintiff. The Railroads and the City have filed separate applications for writ of error. Both applications present the primary question of whether or not the Plaintiff's access rights have been impaired to such an extent as to constitute damage to his property for public use under Article I, § 17, of the Texas Constitution. We have concluded that the courts below have correctly held that Plaintiff's access rights have been impaired to an extent which constitutes a damage to his property for public use under the Constitution; but for reasons hereinafter discussed, we find that errors were committed which require that the judgments below be reversed and the cause be remanded to the trial court for a new trial.

1. "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * *."

The construction of a railroad grade separation project by the Railroads under an agreement with the City set in motion the resulting deprivation of a reasonable access to Plaintiff's property. The term of Plaintiff's leasehold estate, including building and improvements does not expire until April 22, 2021 A.D. The leased property is situated on Lots 153 and 154 in Block 36 of the City of Beaumont, with a frontage of 120 feet on both Orleans and Gilbert Streets. Block 36 is bordered by Orleans Street on the west, Gilbert Street on the north, Pearl Street on the east and Milam Street on the south. The situation of Plaintiff's property before and after construction of the project is shown by Appendix "A" and Appendix "B", respectively, attached hereto. The lots involved are located in the northwest corner of Block 36. Before the project was begun this property fronted on Orleans Street, a one-way street running north, and Gilbert Street, a two-way street running east and west. A single railroad track ran along the middle of Gilbert Street. Both Orleans and Gilbert Streets were sixty (60) feet in width. At the time of the construction of the project, the Wholesale Automotive Supply Company was the sublessee of the Plaintiff's leased lots and occupied the building situated thereon. It is stated as a fact that this company moved from the premises in the latter part of 1964, but continued the payment of rent for the remaining fourteen (14) months of its lease contract. Since the completion of the project, there has been no tenant occupying or using Plaintiff's lots, except that in February, 1967, the sub-lessee (Wholesale Automotive Supply Company) was granted permission to use the property as a temporary warehouse facility without charge other than caring for the building situated thereon.

After completion of the project, which had as its main purpose the elimination of crossings of streets by railroad tracks at grade, many changes are noticeable. For example, two tracks are now located on Gilbert Street with a consequent higher grade, protected by a curb, so that Orleans Street traffic cannot cross Gilbert Street. Also, only a ten-foot wide traffic lane remains on Gilbert Street, between the new esplanade and the Plaintiff's property. Almost all north bound Orleans Street traffic now angles off to the left after crossing Milam Street, and proceeds under the underpass. In fact, the underpass is now considered part of Orleans Street. The "Old" Orleans Street remains just as it was except for three material changes: (1) the entrance to the street just north of Milam is now only fourteen (14) feet wide instead of sixty (60) feet wide; (2) northbound traffic is now blocked by the new esplanade and must turn right onto Gilbert Street; and (3) there is evidence that the space left for making the right turn from Orleans Street onto Gilbert Street is so limited that large trucks cannot negotiate the turn.

■ It is well settled that abutting property owners, under proof such as presented here, have certain property rights in existing streets and highways in addition to their right in common with the general public to use them. Generally, the most important of these private rights is the access to and from the highway or street. State v. Meyer, 403 S.W.2d 366 (Tex.Sup.1966); DuPuy v. City of Waco, 396 S.W.2d 103 (Tex.Sup.1965) (viaduct); City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 219, 73 A.L.R.2d 640 (1958) (street); Powell v. Houston & T. C. R. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A.,N.S., 1615 (1911) (street); Adams v. Grapotte, 69 S.W.2d 460 (Tex.Civ.App.1934), aff'd 130 Tex. 587, 111 S.W.2d 690 (1938) (sidewalk); Pennysavers Oil Co. v. State, 334 S.W.2d 546 (Tex.Civ.App.1960, writ ref'd) (limited-access highway). This right of access has been described as an easement appurtenant to the abutting land, which includes not merely the ability of the abutting landowner to enter and leave his premises by way of the street or highway,

but also the right to have the premises accessible to patrons, clients and customers. See 10 McQuillin, Municipal Corporations, 671 (3d ed. 1950); Clark, The Limited-Access Highway, 27 Wash.L.Rev. 111 (1952); Note 3, Stanford L.Rev. 298 (1951).

In *DuPuy*, supra, although the facts[2] were somewhat different from those presented here, this Court held that:

"It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage."

Also, in *DuPuy*, we said:

"To the same effect is Fort Worth Improvement District No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994 (1913), in which this Court held that if a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, such property is damaged within the meaning of the Constitution, and the law will not permit the infliction of such injury without the allowance of just compensation."

We think that the facts here establish a diminishment in the value of the property resulting from a loss of reasonable access. As the above testimony indicates, there have been three changes wrought by the construction of the project which, considered together, have effected this loss of reasonable access: (1) The space in which to make the turn from "Old" Orleans Street onto Gilbert Street is so narrow that large trucks, presumably of clients, cannot negotiate the turn; (2) the remain-

ing ten (10) foot lane (Gilbert Street) is so narrow that (a) a vehicle could not travel down the street if another vehicle chose to park there, and (b) a vehicle could not safely travel down the street if a train were on the south track; and (3) since "Old" Orleans remains one way north, the driver of a vehicle, too large to make an exit on Gilbert Street, would not be able to turn such vehicle and legally exit south on "Old" Orleans.

We turn now to a consideration of the points of error which afford the basis for our judgment reversing the judgments of the courts below. The Railroads and the City contend that it was harmful error to allow the jury, over objection, to determine the amount of damages it assessed based partly upon evidence of the diversion of traffic under the underpass, as depicted on Plat "B", attached hereto. The witnesses who gave their opinion as to market value of Plaintiff's property after the construction of the project considered the construction of the "New" Orleans Street and the diversion of traffic to the new street as well as "circuity of travel" to reach Plaintiff's property in arriving at their opinion as to market value after construction. In this connection, the only special issues submitted simply inquired of the jury the value of the Plaintiff's property before and after construction. Generally, the matter of what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instruction to the jury. *DuPuy*, supra; State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200 (1936). However, we think a special instruction would have been more appropriate in this instance. It was not error to admit the evidence depicting the changes in the streets brought about by the construction and the circuitous routes neces-

2. In *DuPuy*, the property owner abutted on a paved alley to the east and a two-way street to the south. After construction of a viaduct over and along the two-

way street, 17th Street, a concrete barrier was erected on the old, lower 17th Street, leaving DuPuy fronting on a cul de sac.

sary to travel in reaching the Plaintiff's property; however, it was harmful error to fail to instruct the jury that the diversion of traffic from the old to the new and the "circuity of travel" cannot constitute a deprivation of reasonable access. Diversion of traffic resulting in the necessity of using circuitous routes is not compensable. State Highway Commission v. Humphreys, 58 S.W.2d 144 (Tex.Civ.App.1933, writ ref'd); Pennysavers Oil Co. v. State, 334 S.W.2d 546 (Tex.Civ.App.1960, writ ref'd). A special instruction would have adequately informed the jury that it could not consider such evidence in determining the market value of Plaintiff's property.

■ The Railroads and the City next contend that it was harmful error for the trial court to permit the introduction of an instrument, designated as the "Primary Agreement", between the four railroads (one, the Sante Fe—not a party to this suit) and the City. The contention is made that the error was compounded when the court permitted the attorney for Plaintiff to argue to the jury the contents of the agreement. The Railroads and the City objected to the introduction of the "Primary Agreement" and the argument to the jury on the grounds that the agreement was immaterial to any jury issue which would be submitted for determination. The agreement contained the statement that the total estimated cost of the project was $10,928,374; a provision relating to the contributions of the Railroads in the sum of $2,440,000; and a provision showing the estimated cost of rights of way and property damage to be $880,200. The objection pointed out that the introduction of the agreement injected into the case for consideration by the jury prejudicial matters, such as insurance, allocation of funds, the availability of funds, the source of funds to be used in payment of claims, and the contribution of the parties. Upon another trial, the "Primary Agreement" should not be admitted in evidence before the jury.

■ We point out that the method of proof in the former trial of the market value of the Plaintiff's leasehold interest followed very closely the rule announced in Urban Renewal Agency of the City of Lubbock v. Trammell, 407 S.W.2d 773 (Tex.Sup.1966). On the question of the market value of the Plaintiff's leasehold interest, before and after the project, the Railroads' expert witness testified that the value before construction was $35,500, and the value after construction was $9,000; the Plaintiff's expert witness testified that the value before the construction was $55,302, and after, $6,892. The jury found that the market value before the project was $55,000; after the project, $9,000. The Plaintiff's expert arrived at the figure $55,302 by appraising the property, by use of the income approach, at $74,400. He felt that this figure more nearly represented the market value of the property than did the figures he got by using the cost approach ($80,000) or the market or comparable approach ($75,000). Next he determined the market value of the interest of the landowner ($14,585) and of the sublessee ($4,513), and subtracted the total of the latter two ($19,098) from $74,400 to arrive at the market value of the Plaintiff's interest, $55,302. The Railroads' expert witness also felt that the income approach reflected the market value better than the cost or market approach. Using the income approach, he found the market value of the *property* to be $48,000, and the market value of the leasehold, Plaintiff's interest, $35,500. This method of proof followed very closely the rule announced in *Trammell,* supra.

■ Finally, the Railroads' point that the Court of Civil Appeals erred in affirming the judgment of the trial court in its holding that the Railroads were jointly and severally liable with the City to Plaintiff for the damages occasioned by the construction of the project is overruled.

The judgments of the trial court and the Court of Civil Appeals are both reversed

and judgment is here rendered that the cause be remanded to the trial court for a new trial not inconsistent with this opinion.

All costs are adjudged against the Respondent, A. B. Marks.

McGEE, J., not sitting.

APPENDIX A

VIEW OF PARK-ORLEANS UNDERPASS & ENVIRONS DEPICTING WAYS OF INGRESS TO AND EGRESS FROM A B MARKS PROPERTY

- 52 -

## ON MOTION FOR REHEARING

The Petitioners and the Respondent have filed motions for rehearing. We overrule all motions. We adhere to the judgment heretofore rendered. However, we find it necessary to take note of Respondent's motion to the extent of retracting the holding that a special instruction would have been appropriate and that it was harmful error to fail to instruct the jury that the construction of a new street and diversion of traffic from the old to the new and the circuity of travel cannot constitute a deprivation of reasonable access. Failure to instruct the jury in regard to these matters was not before the Court. The Court was never called upon to so instruct the jury. The only ruling of the Court with which we are concerned is the action of the Court in overruling Petitioners' objections to evidence of diversion of traffic and circuity of travel to be used and taken into consideration by the witnesses in ar-

riving at their opinion as to market value of Plaintiff's property after the construction of the project. The only special issues submitted to the jury for determination simply inquired as to the value of the Plaintiff's property before and after construction. It was harmful error to allow the introduction of the objectionable evidence for the jury's consideration in determining its answers to the special issues submitted. Diversion of traffic resulting in the necessity of using circuitous routes is not compensable. See authorities cited in our original opinion.

The motions for rehearing are overruled. No further motions for rehearing will be entertained.