Appellant=s Motion for En Banc Rehearing Denied; and Dissenting Opinion
to the Denial of En Banc Rehearing filed November 18, 2004









 



Appellant=s
Motion for En Banc Rehearing Denied; and Dissenting Opinion to the Denial of En
Banc Rehearing filed November 18, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00052-CV

____________

 

THE STATE OF TEXAS
and THE TEXAS DEPARTMENT OF TRANSPORTATION, Appellants

 

V.

 

GEORGE M. DELANY
and PATRICIA ANN DELANY, Appellees

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 00CV0008

 



 

DISSENTING  OPINION

TO 
THE  DENIAL  OF 
EN  BANC  REHEARING








George and Patricia Delany sued the State
of Texas and the Texas Department of Transportation for inverse condemnation
seeking compensation for the alleged denial of access to their unimproved 3.48
acre tract of land in Galveston County. 
After a bench trial, the court found for the Delanys and awarded them
actual damages for Athe State=s material and
substantial impairment of access,@ sanctions,
prejudgment interest, and court costs for a total judgment of $497,637.80.  A panel of this court subsequently affirmed
the trial court=s judgment.[1]  The State now seeks en banc rehearing.  Because I find both the law and logic of the
panel=s opinion to be
seriously flawed, I respectfully dissent to the denial of en banc rehearing.




 
 
  
 
 




 In
1947, the State condemned a 300 foot-wide right-of-way for the construction of
the AGulf Freeway,@ also known today
as Interstate Highway 45.  The new
highway intersected Johnny Palmer Road. 
In 1965, the State began constructing an overpass to enable traffic on
Johnny Palmer Road to pass over IH-45. 
To facilitate the construction of a highway exit for Johnny Palmer Road,
the State condemned an additional 5.733 acres belonging to the Delanys, leaving
a remainder of 3.48 acres.

 








Although the remainder abutted the highway
right-of-way, the Delanys had no direct access to any public road.  The nearest road was the Johnny Palmer
Road  exitCapproximately 50
to 60 feet away.  The Delanys could have
applied for a permit for as many as three driveways across the right-of-way to
gain access to the Johnny Palmer Road exit, but they never applied for a permit.  In 1998, the State relocated the Johnny
Palmer Road exit for safety reasons, and removed the former access road.  Now, the Delanys= nearest public
road is the IH-45 frontage road.  The
Delanys still have potential Aaccess@ to IH-45 in that
the State has agreed to permit them to have two driveways of 240 and 590 feet
across the highway right-of-way.  The
Delanys, however, have not  availed
themselves of this offer.




 
 
 
 
 




 

 

 

 

 

 

 

 

 

 

 

 

 

 

 








To succeed in a suit for inverse condemnation,
the plaintiff must show (1) the government physically appropriated or invaded
his property, or (2) it unreasonably interfered with his right to use and enjoy
the property, such as by restricting access or denying a permit for
development.  Westgate, Ltd. v. State,
843 S.W.2d 448, 452 (Tex. 1992).  Here,
the Delanys do not contend the State appropriated or invaded their
property.  Rather, they claim  they Ahave been deprived
of all access on and off the Property, effectively landlocking the Property.@  Were this allegation true, the Delanys
undoubtedly would be entitled to compensation. 
However, the Delanys have always had a limited right of access to the
highway, and that is what they still have. 
See Pennysavers Oil Co. v. State, 334 S.W.2d 546, 549 (Tex. Civ.
App.CSan Antonio 1960,
writ ref=d).

The panel opinion relies heavily on the
fact that property owners abutting a highway have a compensable,
constitutionally protected property right in an easement of access to and from
the highway.  See DuPuy v. City of
Waco, 396 S.W.2d 103, 108 (Tex. 1965). 
However, the landowner is only guaranteed Areasonable@ access, and a
landowner=s access is not materially and
substantially impaired if he retains access to his property by way of a
different street or a more circuitous route. 
Carson v. State, 117 S.W.3d 63, 69 (Tex. App.CAustin 2003, no
pet.).  Here, the State offered evidence
that a driveway permit already has been conditionally granted that would allow the
Delanys access to IH-45 via two driveways if and when they should ever desire
such driveways.  Citing State v.
Fuller, the panel rejected this argument under the mistaken theory that the
State has abandoned the right-of-way of the former Johnny Parker Road exit and,
thus, no access rights may now be granted across it.  407 S.W.2d 215, 221 (Tex. 1966).  This rationale is patently erroneous.








The State acquired absolute title to the
land in 1965.  The old Johnny Palmer Road
exit has been removed, but the State still holds the land in fee simple.  Thus, while Fuller stands for the
proposition that the State, in some circumstances, may not be required
to grant access across the land, nothing in Fuller suggests the State
does not possess the power and authority to do so if it chooses.  In this sense, the State is correct in its
assertion that the Delanys= suit is
premature.  If the State should on some future
occasion refuse access to IH-45 by denying driveway permits across its
property, an inverse condemnation case undoubtedly would ripen.  Until such time, the Delanys can only offer
evidence of a potential inverse condemnation.

Whether access rights have been materially
and substantially impaired is a question of law.  State v. Heal, 917 S.W.2d 6, 9 (Tex.
1996).  Accordingly, we have no
obligation to defer to the trial court=s conclusions in
this regard.  See Interstate
Northborough P=ship v. State, 66 S.W.3d 213,
220 (Tex. 2001).  Prior to the relocation
of the Johnny Palmer Road exit, the Delanys had potential access to IH-45
frontage road via driveways to the Johnny Palmer Road exit ramp and thence to
Johnny Palmer Road and thence to the Johnny Palmer entrance ramp.  Today, the Delanys have potential access via
driveways directly to the IH-45 frontage road. 
The Delanys argue that such driveways are an impairment of their former
potential access because the driveways will have to be considerably longer than
those that could have been constructed before the Johnny Palmer Road exit was
relocated.  However, circuity of travel
is, as a matter of law, non-compensable. 
State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex.
1988).  Moreover, the driveways will
provide a more direct and shorter route to IH-45 than the old Johnny Palmer
Road exit.

While framed in terms of a denial or
impairment of access, the Delanys real complaint is that the commercial value
of their property was $2.50 per square foot before the Johnny Palmer Road exit
was relocated.  Today, the property=s value is
approximately 254 per square foot.  The Delanys contend they are entitled to
recover the difference in the value of their property before and after the
Johnny Palmer exit was relocated.








The Delanys may well have suffered a
diminution in the value of their property, but it is well established that the
benefits which come and go from the changing currents of travel are not matters
in respect to which any individual has any vested right against the judgment of
the public authorities.  See State
Highway Comm=n v. Humphreys, 58 S.W.2d 144,
145 (Tex. Civ. App.CSan Antonio 1933) (quoting Heller v.
Atchison, T. & S. F. Ry. Co., 28 Kan. 625 (1882)).  AIf the public
authorities could never change a street or highway without paying all persons
along such thoroughfares for their loss of business, the cost would be
prohibitive.  The highways primarily are
for the benefit of the traveling public, and are only incidentally for the
benefit of those who are engaged in business along its way.  They build up their businesses knowing that
new roads may be built that will largely take away the traveling public.  This is a risk they must necessarily assume.@  Id.

In fact, the Texas Supreme Court has never
allowed recovery in an inverse condemnation case for damages resulting from a
diversion of traffic or a circuity of travel. 
State v. Schmidt, 867 S.W.2d 769, 774 (Tex. 1993).  If the State had decided to build a new
freeway a mile from the Delanys= property, the
Delanys likewise would have lost the commercial value of their land, Abut no abutting
property owner has a vested interest in the traffic that passes in front of his
property, and if this traffic is diverted by the State building a road at
another place, and the traveling public prefer to travel the new road and
abandon the old road, the State cannot be held liable for any loss of trade
suffered by an abutting landowner on the old abandoned road.@  Pennysavers, 334 S.W.2d at 549.  A landowner simply has no vested interest in
the volume or route of passersby.  Schmidt,
867 S.W.2d at 774.

In summary, a landowner may not Arecover damages
for inverse condemnation under Tex. Const. art. I, ' 17 where the
government has not physically appropriated, denied access to, or otherwise
directly restricted the use of the landowner=s property.@  Westgate, Ltd., 843 at 450.  Yet, this is precisely what this court has
permitted the Delanys to do. 
Accordingly, I respectfully dissent to the denial of en banc rehearing.

 

/s/      J. Harvey Hudson

Justice

 

Judgment
rendered and Dissenting Opinion to the Denial of En Banc Rehearing filed
November 18, 2004.

Chief Justice
Hedges, Senior Chief Justice Murphy,* and Justices Yates,
Anderson, Fowler, Frost, Seymore, and Guzman voted to deny rehearing en
banc.  Justice Hudson dissented to the
denial of en banc rehearing.  Justice
Edelman joined the dissent.











[1]  See State
v. Delany, No. 04-03-00052-CV, 2004 WL 503632 (Tex. App.CHouston [14th Dist.] Mar. 16, 2004).





*  Senior Chief
Justice Paul C. Murphy sitting by assignment.