# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00042-CV

**City of Austin, Texas, Appellant**

**v.**

**1811 Guadalupe LLC, Appellee**

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-001308
### THE HONORABLE CLEVE WESTON DOTY, JUDGE PRESIDING

## O P I N I O N

1811 Guadalupe, LLC, sued the City of Austin for damages under the takings clause of the Texas Constitution, alleging the City's removal of 1811 Guadalupe's slip lane impaired 1811 Guadalupe's access to its property and thus constituted a compensable taking under Texas law. *See* Tex. Const. art. I, § 17. The City filed a plea to the jurisdiction, arguing 1811 Guadalupe's allegations were insufficient to waive the City's governmental immunity. The trial court denied the City's plea to the jurisdiction, and the City filed this interlocutory appeal alleging the following issues: (1) whether 1811 Guadalupe raised a fact issue about whether the closure of the slip lane caused a substantial and material impairment of access as required to waive the City's governmental immunity; and (2) whether the trial court abused its discretion in admitting 1811 Guadalupe's expert report despite 1811 Guadalupe allegedly missing the expert disclosure deadline. For the following reasons, we affirm the trial court's order.

## BACKGROUND

The subject of this suit is a piece of property (Property) in Austin located at the southeast corner of Guadalupe Street and Martin Luther King Boulevard (MLK) with a physical address of 1811 Guadalupe. The Property is zoned for Downtown Mixed Use development. Up until the last few years, a Pizza Hut franchise operated on the site. Before the alleged taking by the City occurred—the subject of this suit—the majority of 1811 Guadalupe's street frontage was located on the west side. This included approximately 150 feet worth of a one-way "slip lane" (or "slip street") that connected Guadalupe and MLK. The slip lane ran adjacent to three "curb cuts."[1] The Property also included an alley south of the Property running between Lavaca and Guadalupe streets. Delivery vehicles were once able to access the Property from an entrance on MLK, from the slip lane, and from the alleyway connecting Lavaca and Guadalupe streets, as depicted in the images below. [2] [3]

---

[1] A curb cut is commonly defined as "a ramp cut into a street curb to provide vehicular access to a driveway or parking space." *Curb cut*, MIRRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/curb%20cut (last visited Jan. 30, 2024).

[2] The delivery vehicles, due to their large size and difficulty in turning, would traditionally enter the Property on MLK and exit through the slip lane, thus obviating the need to exit via backing out on MLK.

[3] The images in this opinion are from the parties' pleadings.

2





3

In 2014, the City Transportation Division began making improvements to the MLK and Guadalupe Street intersection in a project called Phase I Contraflow Project.[4]  The Project was aimed at improving transportation access for bicyclists, pedestrians, and city buses.  One of the improvements included the implementation of a two-stage left turn for bicyclists traveling north on Guadalupe to turn left onto MLK (illustrated by the yellow, numbered path on the graphic below).  The Project also added a new shared use path with designated space for pedestrians and bicyclists, and it dedicated one lane of traffic on Guadalupe as a bus-only lane.  This bus-only lane was added onto Guadalupe Street, directly adjacent to the Property (illustrated in orange).  As a result, the slip lane that ran from Guadalupe to MLK was no longer usable by vehicles.  The relevant transportation improvements were completed in summer 2019 and are pictured below.



---

[4]  This Project was part of several multi-stage improvements made by the City to the Guadalupe Street and MLK Boulevard Corridor.

Because vehicle access to the slip lane was eliminated, delivery vehicles could no longer use it to access the Property as they had before—the vehicles were previously known to enter the Property from the MLK entrance and exit via the slip lane in order to avoid the complications from turning vehicles with large turning radii. Instead, 1811 Guadalupe claims, the Property could thereafter only be accessed by vehicle via the entrance on MLK and the alley. 1811 Guadalupe argues that the City's improvements to the Guadalupe and MLK intersection resulted in a substantial and material impairment of access to the Property, amounting to a compensable taking.

## PROCEDURAL BACKGROUND

1811 Guadalupe filed this inverse condemnation suit against the City, alleging that the elimination of the slip lane access on Guadalupe amounted to a compensable "taking" under Texas law. The City answered and filed a plea to the jurisdiction, arguing that the City's governmental immunity was not waived because 1811 Guadalupe could not show that the impairment was substantial and material. In support, the City attached evidence including an affidavit and report from City employee A. Lee Austin, various photographs of the premises, and portions of the City's development plans that included the improvements at issue. 1811 Guadalupe sought discovery from the City and the City objected, claiming that its plea was pending and therefore the City should not be subjected to discovery that does not implicate a jurisdictional issue. 1811 Guadalupe filed a motion to compel which the trial court denied. Approximately two weeks before the trial court was set to hear the City's plea, 1811 Guadalupe disclosed traffic engineer Ravali Kosaraju as an expert and submitted as evidence in its plea response her expert report and affidavit, photographs of the Property, City documents reflecting the implementation

5

and progress of the Projects at issue, and two city ordinances. One day before the plea hearing, the City moved to strike Kosaraju's report, arguing that she was disclosed out of time in violation of Rule 193.6 of Civil Procedure (Failing to Timely Respond – Effect on Trial) and that her report should therefore be excluded. At the hearing, the trial court overruled the City's objections to 1811 Guadalupe's expert report and affidavit and denied the City's plea. This interlocutory appeal followed.

### *Standard of Review*

A plea to the jurisdiction challenges a court's jurisdiction to hear the case. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)*; see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227; *see also Bland Indep. Sch. Dist*, 34 S.W.3d at 555. When those challenged jurisdictional facts also implicate the merits of the plaintiff's claim, as in this case, the plaintiff's burden mirrors that of a traditional motion for summary judgment. *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). Consequently, we review the relevant evidence in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 226). If the evidence creates a fact issue regarding the jurisdictional issue, then the trial court

cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or does not raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id.* at 228; *see also City of Keller v. Hall*, 433 S.W.3d 708, 728 (Tex. App.—Fort Worth, 2014, pet. denied) (noting that, in inverse condemnation appeal concerning jurisdictional plea, appellate court considers only (1) whether plaintiffs pleaded valid taking claim and (2) whether jurisdictional evidence at least raises a fact issue on inverse condemnation).

## DISCUSSION

The City asserts two issues on appeal, contending that (1) the trial court erred in denying the City's plea because 1811 Guadalupe failed to produce evidence that the alleged impairment of access was "substantial and material"; and (2) the trial court abused its discretion in admitting 1811 Guadalupe's late-disclosed expert's report and affidavit. We begin with the second issue.

### *Whether 1811 Guadalupe's expert report and affidavit should have been excluded when the authoring expert was not timely disclosed*

The City argues that the trial court abused its discretion in allowing 1811 Guadalupe to disclose Kosaraju out of time under Texas Rule of Civil Procedure 193.6, and that accordingly, her report and affidavit should not have been considered as part of 1811 Guadalupe's plea response. For the following reasons, we hold that Rule 193.6's provisions excluding evidence not timely disclosed do not apply to a party's efforts to introduce evidence in opposition to a dilatory plea that challenges the trial court's subject-matter jurisdiction.

A trial court's decision on whether to admit testimony and evidence from an untimely disclosed expert is reviewed for an abuse of discretion. *See Fort Brown Villas III Condo.*

7

*Ass'n v. Gillenwater*, 285 S.W.3d 879, 881–82 (Tex. 2009). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, or without regard for any guiding rules or principles. *See Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). The ruling will be upheld if there is any legitimate basis for it. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). The City argues that 1811 Guadalupe's disclosure of Kosaraju as its expert was not timely, and therefore Kosaraju's report and affidavit could not be considered as part of 1811 Guadalupe's response to the City's plea, under the deadlines applicable in suits governed by Level 2 discovery control plans. Specifically, the City claims, although 1811 Guadalupe sought for the suit to be governed by a Level 3 discovery control plan, because no scheduling order was entered, the case was governed automatically under a Level 2 plan. Under a Level 2 plan, a suit's discovery period ends by the earlier of 30 days before the date set for trial or nine months after initial disclosures are due. *See* Tex. R. Civ. P. 190.3(b)(1)(B). A party seeking affirmative relief must designate testifying experts 90 days before the end of the discovery period. *See id.* R. 195.2(a). Initial disclosures were due on May 26, 2021 and no trial date had been set. *See id.* R. 194.2(a). Accordingly, the City argues, pursuant to Level 2 scheduling deadlines, because the discovery period was set to close on February 28, 2022, 1811 Guadalupe was required to disclose Kosaraju as a testifying expert no later than November 30, 2021. *See id.* R. 195.2(a). Kosaraju was disclosed on December 21, 2021. Because the expert disclosure and corresponding report and affidavit were late, the City argues, the trial court abused its discretion in failing to exclude those items as part of 1811 Guadalupe's plea response.

But because Rule 193.6's provisions excluding evidence not timely disclosed do not apply to a party's efforts to introduce evidence in opposition to a dilatory plea that challenges the trial court's subject-matter jurisdiction, the trial court did not abuse its discretion in refusing to

8

exclude the report and affidavit under Rule 193.6. Here, the substance of the City's plea was that 1811 Guadalupe could not show a waiver of the City's governmental immunity because it could not establish that the impaired access to the Property constituted a substantial and material impairment to the property, and thus a taking. *See City of Waco v. Texland Corp.*, 446 S.W.2d 1, 4 (Tex. 1969). Both the City and 1811 Guadalupe put forth their respective experts' reports and affidavits to establish whether 1811 Guadalupe had suffered a substantial and material impairment of access as a result of the City's improvements. "Material and substantial impairment" is also part of the merits of 1811 Guadalupe's inverse-condemnation claim, thus it is both a threshold jurisdictional issue and a merits issue. *See State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (providing that whether impairment of access is material and substantial is question of law, not of fact). In *Schronk v. City of Burleson*, our sister court held that while evidence offered in support of or in response to jurisdictional plea must satisfy rules of evidence, an "expert need not be disclosed under [] Rule 194.2 before he can offer evidence relevant to jurisdictional issues in dispute." 387 S.W.3d 692, 708 (Tex. App.—Waco 2009, pet. denied). We agree with our sister court in that Rule 193.6's exclusionary rule does not apply to exclude evidence from trial courts' consideration of pleas to the jurisdiction like the one here. For this reason, whether 1811 Guadalupe's disclosure of Kosaraju was timely is not relevant to our analysis of whether the trial court abused its discretion by refusing to exclude the report and affidavit.[5] We hold the trial court did not abuse its discretion in overruling the City's objections to 1811 Guadalupe's expert's report and affidavit. We overrule the City's second issue.

---

[5] For this same reason, it is not necessary for us to address 1811 Guadalupe's contention that its expert disclosure, if it was in fact late-disclosed, should be excused because it did not create an unfair surprise or prejudice to the City. *See* Tex. R. Civ. P. 193.6(a)(2).

***Whether 1811 Guadalupe raised a fact issue about a substantial and material impairment of access***

Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made…" Tex. Const. art. I, § 17. This section waives immunity for any claim that falls within it, including inverse condemnation claims. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). An inverse condemnation claim is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *United States v. Clarke*, 445 U.S. 253, 257 (1980); *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971). The proceeding is "inverse" because the property owner brings the suit, as compared to a condemnation proceeding brought by a governmental entity to appropriate private property for a public purpose. *City of Carrollton v. HEB Parkway S., Ltd.*, 317 S.W.3d 787, 792 (Tex. App.—Fort Worth 2010, no pet.).

As used in Article I, Section 17, the term "property" encompasses not only the physical realty owned, but "rights that accompany the ownership and that are incident thereto." *Gulf Colo. & Santa Fe Ry. v. Fuller*, 63 Tex. 467, 469 (1885). As a matter of law, it is a settled rule that an access easement—as is implicated in this case with regard to the slip lane—is a property right. *See DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965). Here, 1811 Guadalupe pleaded that the City's improvements constituted both a "taking" claim and a "damages" claim. *See Steele v. City of Houston*, 603 S.W.2d 786, 789–91 (Tex. 1980) (holding that Article I, Section 17 contains three triggering events that give rise to liability, including

"taking," "damaging," and "destruction" of one's property). In a takings case based on impairment of access, Texas courts have held that "the diminished value resulting from impaired access is compensable only when access is materially and substantially impaired." *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008) (citing *Texland*, 446 S.W.2d at 4) (providing that property owner may still recover damages if access is substantially and materially impaired)). Under the "substantial and material standard," courts begin by looking to whether other access points remain after the taking and whether those access points are reasonable. *Id.* "Whether access has been materially and substantially impaired is a threshold question of law reviewed de novo." *Id.* Diminished access is not a compensable cause of action if suitable access remains. *See City of San Antonio v. TPLP Off. Park Props.*, 218 S.W.3d 60, 66 (Tex. 2007); *see also Archenhold Auto Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex. 1965). If suitable access remains, a taking will only occur if the property's purpose for which it was specifically intended was rendered unreasonably deficient. *See State v. Heal*, 917 S.W.2d 6, 10 (Tex. 1996).

The City's argument is that the elimination of the slip lane alone is insufficient to show a substantial and material impairment because delivery vehicles can still enter the Property using the entrance on MLK and the alleyway behind the Property. The City also argues that the closure of the slip lane has merely been an "inconvenience" to 1811 Guadalupe's access to the Property, which is not a compensable injury. *See Heal*, 917 S.W.2d at 7 (holding that plaintiffs were not entitled to compensation in takings claim because evidence showed only inconvenience in accessing property). 1811 Guadalupe responds that a fact issue exists as to whether the closure of the slip lane constituted substantial and material impairment of access to the Property because evidence showed that vehicle access to the Property is no longer suitable. We agree.

11

In *City of Beaumont v. Marks*, the plaintiff owned a corner property with frontage access to Orleans Street and Gilbert Street, with a single railroad track running down the middle of Gilbert Street. 443 S.W.2d 253, 255 (Tex. 1969). Gilbert Street also contained a ten-foot-wide traffic lane. *Id.* After the City of Beaumont implemented city improvements that effected the plaintiff's property, the traffic on Orleans Street could no longer cross Gilbert Street. *Id.* Instead, traffic was required to make a sharp right turn onto Gilbert Street. *Id.* The plaintiff presented evidence that this right turn was too sharp for large trucks to navigate when entering onto the property. *Id.* The court found that this evidence showed deprivation of reasonable access to the plaintiff's property and that the plaintiff was entitled to recover for the diminishment in value of his property. *Id.* at 256.

Similarly, in *Texland*, a property owner brought suit against the city of Waco, arguing that the city's street improvements hindered transport vehicles from maneuvering in and out of the plaintiff's property. 446 S.W.2d at 4. In that case, the property was located in an area zoned for heavy industrial uses and located in a manufacturing and warehousing district, meaning large transport vehicles frequently entered and exited the property. *Id.* After the city made the street improvements, it became difficult and impractical for the transport vehicles to park, back up, or maneuver within the property. *Id.* The court held that the difficulty and impracticality to the transport vehicles constituted a substantial and material impairment of access to the property, and the property was damaged as a result. *Id.*

Like the plaintiffs in *Marks* and *Texland*, 1811 Guadalupe alleged facts showing that the City's removal of the slip lane significantly impacted delivery vehicles' access to the Property. As part of its jurisdictional evidence regarding whether the impaired access was substantial and material, 1811 Guadalupe provided facts showing that the closure of the slip lane

12

prevents delivery vehicles from entering through one access point and exiting another as they had previously done in order to avoid the difficulty making sharp turns in a large vehicle. Instead, vehicles would have to enter and exit the Property through the MLK entrance or use the alley. According to 1811 Guadalupe, each alternative is unreasonable.

Kosaraju's expert report indicated that the entrance to the Property from MLK was limited even before the implementation of the Project, due to the proximity of the signalized intersection at Guadalupe and MLK. Now, large vehicles that were previously able to enter the Property from the MLK entrance and exit onto Guadalupe would have to enter—and back out of— the MLK entrance in order to make deliveries to the Property, forcing "greater use of this limited and dangerous MLK access point." In its plea, the City attached a report from City employee A. Lee Austin suggesting that large delivery vehicles could acquire a Commercial Vehicle Loading Permit from the City in order to unload and offload directly on MLK during non-peak traffic hours, thus obviating the need to enter the Property at all. The City presented no admissible evidence to negate Kosaraju's assertion that the MLK entrance was now unreasonable. *See City of Lake Jackson v. Adaway,* No. 01-22-00033-CV, 2023 WL 3588383, at *6 (Tex. App.—Houston [1st Dist.] May 23, 2023, no pet.) (mem. op.) ("A governmental entity may challenge jurisdictional facts with evidence, but the burden is on the governmental entity to produce evidence that conclusively disproves the plaintiff's jurisdictional facts."). In addition, while the City claims that the slip lane was not previously used as a thoroughfare for vehicles, rather that it was predominantly used for parking, it presented no evidence to dispute 1811 Guadalupe's evidence.

In addition to its discussion of the MLK entrance, Kosaraju's report indicates that the alley presents its own safety concerns. The alley is pictured below, with the camera angle pointing east toward Lavaca Street.



Kosaraju's report contends that the alley is not suited for two-way access—contrary to the City's claims—because not all points in the alley reach the 20-foot width minimum as required by City ordinances. In Kosaraju's opinion, "treating [the alley] as a two-way alley increases the prospective accidents and impasses due to motorists traveling down the alley in the opposite direction, which may necessitate one [vehicle's] backing down the alley to escape[,] causing safety concerns." In addition, she opined that even if the alley access was one-way, that condition would also present safety concerns because the alley's entrance and exit sites are highly trafficked bus route (see below), causing buses to block the alley openings. *See Marks*, 443 S.W.2d at 253.



1811 Guadalupe presented additional evidence showing that, because the City buses traveling in the bus-only lane are not required to yield to vehicles exiting the alley, and because the alley exits already present limited-sight problems, the alley prevents vehicles, especially larger vehicles, from entering and exiting the alley in a safe manner. Kosaraju's report showed that the limited turning radius of most delivery vehicles, combined with the limitations of the developed site and the elimination of the West Guadalupe driveways, would make on-site commercial deliveries difficult and dangerous for smaller trucks and nearly impossible for the typical commercial vehicle. We conclude that this evidence is sufficient to raise a fact issue as to whether the access impairment to the Property was substantial and material. *See City of Lake Jackson*, 2023 WL 3588383, at *6; *see also Marks*, 443 S.W.2d at 253; *Texland*, 446 S.W.2d at 4.

Accordingly, we conclude that 1811 Guadalupe met its burden on the issue of substantial and material impairment and that its evidence created a fact issue on whether the

remaining access points to the Property—MLK and the alley—were reasonable. *See Archenhold*, 396 S.W.2d at 114; *see also City of San Antonio*, 218 S.W.3d at 66; *City of Keller*, 433 S.W.3d at 715 (providing that, where jurisdictional evidence also implicates merits of plaintiff's case, trial court cannot grant plea to the jurisdiction if evidence created fact issue regarding jurisdiction). We overrule the City's first issue.

## CONCLUSION

Having overruled both the City's issues, we affirm the order of the trial court denying the City's plea to the jurisdiction.

 

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   January 31, 2024

16