**BAKER BROS. NURSERY, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 16313.

Court of Civil Appeals of Texas.

Fort Worth.

April 13, 1962.

Rehearing Denied May 11, 1962.

Simon & Simon and Richard U. Simon, Fort Worth, for appellant.

Will Wilson, Atty. Gen., Morgan Nesbitt, John B. Webster, Mitchell D. Stevens, and David S. McAngus, Assts. Atty. Gen., Austin, for appellee.

MASSEY, Chief Justice.

This is a condemnation case. Issues involved relate to the matter of how much compensation the condemnee, Baker Bros. Nursery, is entitled to receive from the condemnor, State of Texas, by reason of property taken for a limited access highway and by reason of loss and damage accruing to the condemnee as result of a diminishment, if any, in value of condemnee's remaining property in view of the loss of the property taken.

Trial was to a jury. The judgment entered was upon the verdict returned by the jury. From this judgment the condemnee nursery has perfected an appeal.

Judgment reversed and cause remanded.

Under its ninth point of error the condemnee complains because of the admission of the testimony of Luther Meacham and J. E. Lutz, condemnor's expert real estate appraisal witnesses. Condemnee cites Oakley v. State, 1961 (Tex.Civ.App., Austin), 346 S.W.2d 943, writ of error granted, as authority for the contention that the values and prices testified to by the witnesses in sales believed to be comparable were inadmissible on the ground that such constituted hearsay. Condemnee candidly admitted that there were authorities holding both ways so that the state of the law was uncertain.

Since date of submission, the Supreme Court has handed down its opinion in State of Texas v. Ralph Oakley et al., Tex., 356 S.W.2d 909, reversing Oakley v. State, Tex. Civ.App., 346 S.W.2d 943. In view of the holding and statements there made we are of the opinion that the admission of the testimony of Luther Meacham was proper, but that the testimony of J. E. Lutz, not having been admitted for limited purposes (as was the case with the testimony of Meacham), was improperly received. Having been erroneously received, the question would be whether reception of Lutz' testimony resulted in prejudicial error under Texas Rules Civ.Proc. 434.

Preliminary to discussion we desire to cite certain language from the case of Hays v. State, 1960 (Tex.Civ.App., Dallas), 342 S.W.2d 167, 170, writ ref. n. r. e., as follows: "Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions."

In view of the majority opinion of the Supreme Court in State of Texas v. Ralph Oakley, we believe that it is now established that in condemnation cases an expert value-witness, after having been qualified as such, is not to be so limited on direct examination that he cannot go into details of investigation and findings on the matter of "comparative sales" and testify

as to what knowledge he acquired by way of hearsay concerning the prices paid as consideration therefor, but that he may do so provided such evidence is received for consideration by the jury with *substantial safeguards against any misuse.*

Even before such opinion by the Supreme Court, a value-witness was always permitted to give his opinion of the value of the property condemned, after he had been qualified as an expert, leaving any testimony in connection with matters taken into consideration in arriving at the opinion value given, such as hearsay prices paid in comparable sales, etc., to be developed on cross-examination. This is the Condition III mentioned in the case of Hays v. State, supra.

In view of the Supreme Court's decision in Oakley, it would appear that such testimony may also be given under Condition II (in Hays v. State) and during the course of direct interrogation, *provided there are substantial safeguards against any misuse or misconception on the part of the jury concerning the value of such testimony.* In the Oakley case it was held that such substantial safeguard was afforded by the following instruction of the court to the jury: " 'You are instructed that testimony by witnesses not having first-hand knowledge of the matter stated that certain properties had sold for certain prices shall not be considered as evidence that such properties have sold or that such properties have sold for the prices stated, or as evidence of the market value of the property involved, but may only be considered as being information which the witnesses testified they gathered for the purpose of forming an opinion of the market value of the property involved.' "

From the entire tenor of the Supreme Court opinion in the Oakley case, we have no doubt but that like evidence may not be received under Condition I mentioned in the case of Hays v. State, supra. In other words, if the hearsay evidence as to prices paid in comparable sales transactions did or could amount to original evidence, to independent substantive evidence of the values of property so "changing hands", or as evidence that such prices were what was actually paid pursuant to the transactions, it would be inhibited under the ordinary rules of evidence relating to "hearsay".

In the case before us the evidence of J. E. Lutz was or might be considered to have been received by the jury under said condition I, i.e., as independent substantive evidence of the values of the comparable parcels considered by him, or as evidence that the "hearsay" prices quoted by the witness were what was actually paid pursuant to the transactions. The jury was never instructed that the prices about which Lutz testified in the comparable sales could not be considered as evidence of the value or of the prices actually paid, nor was the tender of such evidence on direct examination accompanied by any limitation of purpose. The interrogation of the witness proceeded as follows:

"Q. Mr. Lutz, did you find any sales of property that you considered comparable to this upon which to form an opinion as to the market value of this property?"

(Here followed an objection on various grounds, including that of "hearsay", and the court gave condemnee a running bill of exception to witness' testimony about comparable sales. The question was never answered, but direct examination of the witness continued.)

"Q. Mr. Lutz, will you please give us your first comparable?"

(Here followed testimony on sales transactions the witness considered to be comparable, with description of the properties involved and the "hearsay" prices paid as consideration.)

"CROSS EXAMINATION

"BY MR. SIMON: If the Court, please in order that I may know my

record is correct, I am going to move to strike all the testimony of this witness as relating to comparable sales on the ground as hearsay, immaterial and irrelevant.

"THE COURT: Well, I admit it for the limited purpose of showing the information and data that he considered in arriving at the market value of this property.

"MR. SIMON: I still move to strike.

"THE COURT: Overruled."

The evidence so received having been inadmissible, the question is reached as to whether its reception amounted to harmful error. See The Development of the Doctrine of Harmless Error in Texas, Robert W. Calvert, 31 Tex.Law Review 1. The only evidence from which the jury could have found the values it did find in its verdict was from two value-witnesses of the condemnee, and from Luther Meacham and J. E. Lutz, the condemnor's witnesses. The values found by the jury undoubtedly "comprised" the evidence presented to it, but were very near to those testified to by Meacham and Lutz and at great variance to the values testified to by condemnee's witnesses, evidencing material belief in condemnor's witnesses and material disbelief of the witnesses for condemnee.

Since we have held that the testimony of the witness Lutz was improperly received, that of the witness Meacham becomes material to our consideration on the question of harmful error. There was no instruction to the jury by the court which limited the jury, in its consideration of Meacham's testimony upon the matter of comparable sales, and prices paid in said transactions, as by an instruction such as was given by the trial court in the case of State of Texas v. Ralph Oakley, supra. It was a fact, however, that the tender of Meacham's testimony was accompanied by a limitation and it was offered "for the limited purpose of showing what the appraiser considered in arriving at his opinion of the value (of the property condemned) and it's not offered as direct original evidence of the facts stated therein; it's a matter of showing the basis of his opinion". As so limited the witness' testimony was admitted. No motion was ever made to instruct the jury that it could consider Meacham's testimony for only that limited purpose for which it was received. Since it was so received condemnee was privileged to move that the jury be instructed as in Oakley. If the condemnee was entitled to have the jury so instructed upon motion made therefor, a matter we are not required to decide, the right was of course waived when the motion was not made. Having been tendered for a purpose properly limited, Meacham's testimony was admissible before the jury.

Nevertheless, we have reached the conclusion that but for the reception of the erroneously admitted testimony of the witness Lutz the jury would, in all reasonable probability, have arrived at a valuation of the condemned property, etc., in amount different from that it did actually find, and less than the value which would have been found but for the reception of the inadmissible testimony of Lutz. Meacham testified to prices in connection with five (5) comparable sales, and Lutz, likewise, to five (5) comparable sales, only one of which was a sale of the same parcel of property. By coincidence such transaction was the only one as to which condemnee's objection upon Lutz' testimony could have been properly overruled, the reason therefore being that Lutz was an agent for one of the principals in the transaction, and was testifying from personal knowledge rather than "hearsay". Therefore the inadmissible evidence received was not merely cumulative, but was new and original evidence bearing upon the material issues to be decided by the jury. It follows, in view of our opinion that the jury would have found different property values but for the reception of Lutz' inadmissible testimony, that by reason of its

reception and presumed consideration, the jury did agree to a verdict other than that to which it would have agreed but for the reception thereof. Reversible error therefore appears, and another trial will be required, T.R.C.P. 434.

Other points of error presented to us are either without merit, or, under the state of the entire record in the case, fall short of demonstrating harmful error under tests to be applied in view of T.R.C.P. 434. They are therefore overruled.

■ In view of the necessity of another trial, however, we deem it warranted to discuss a certain matter. Based upon its interpretation of the case of Pennysavers Oil Company v. State, 1960 (Tex.Civ.App., San Antonio), 334 S.W.2d 546, error refused, the condemnor presented a motion in limine in advance of the trial, which not only sought to suppress any reference by counsel to, or any evidence of, the direction of the flow of travel upon the proposed limited access highway occasioning condemnation, but further to likewise suppress reference or evidence of any circuity of travel occasioned by such highway. The trial court sustained the motion. As a matter of fact the evidence placed before the jury did demonstrate all material facts concerning the accessibility of the property remaining in the condemnee after condemnation and after the completion of the highway facility, as such might have bearing upon the increase or decrease in the value of condemnee's remaining property. Therefore, we do not believe any prejudice was occasioned. The same thing might not be true upon the occasion of another trial.

Pennysavers Oil Company v. State, supra, was not a "true" condemnation case. It is true that the form of trial was that of proceedings in eminent domain, but no part of the question posed and to be determined in the trial thereof related to the damage sustained by a condemnee through a diminishment in value of the property remaining in it after and by reason of the "taking" of the parcel of property condemned. Neither was the price owing for, and the condemnation of, the parcel of property taken, as in eminent domain proceedings, involved in the appeal of the case. The author of the opinion was careful so to state. The question in the case was whether a property owner, who had frontage upon and immediate and direct access to a road which was formerly the highway, could claim legal damages of the state because it converted such road to a "frontage road" or access road alongside a new limited access highway or "freeway" which had neither entrance nor exit ramps located proximate to the property. The property was undoubtedly damaged and diminished in value from the *re-routing and diversion of traffic* but such was *damnum absque injuria* and it was this that the court held.

Accessibility to property remaining, as such is to be considered in the ordinary condemnation case, was not involved in the Pennysavers case. In the last paragraph of the opinion it is stated, "The jury correctly found, in effect, that the State had not damaged appellant by taking from it an access easement that it never had". However, it is evident from the whole opinion that such purported issue was never a jury question and need not have been submitted. Had the question so submitted been answered adversely to the state it would have had no effect, and the result of the case in the Court of Civil Appeals would have been identical, for no recovery could have been permitted.

We believe, therefore, that the motion in limine which sought to suppress evidence bearing upon the accessibility of the property remaining after condemnation, or upon the means of ingress and egress thereto, and the manner of effecting the same, whether circuitous or not, should not be given effect upon the occasion of another trial. The instant case is a "true" condemnation case and the doctrine of *damnum absque injuria* could have a limited application at most. However, considera-

tion and award of any damages based upon and flowing from the fact that condemnee had lost or would lose the right of direct and immediate access into the main stream of travel on the limited access roadway would be improper, and it would be correct to so instruct the jury.

Judgment is reversed, and the cause remanded for another trial.