IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-001-CV





HONORABLE DAN MORALES, ATTORNEY GENERAL OF THE STATE OF TEXAS,



 APPELLANT


vs.





CHRYSLER REALTY CORPORATION,



 APPELLEE



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY,



NO. 1723, HONORABLE DAVID PHILLIPS, JUDGE 



 




 This appeal arises from a statutory-condemnation case. The Attorney General ("the
State") appeals from a judgment in favor of appellee, Chrysler Realty Corporation ("Chrysler").



THE CONTROVERSY



 This is another in a series of condemnation actions by the State to obtain property
for the widening of U.S. Highway 183. Chrysler owns a car dealership sales facility on property
located on the northbound IH-35 frontage road at the intersection of Blackson Avenue in Austin,
Texas. This condemnation proceeding concerned the taking of approximately four thousand
square feet of frontage from Chrysler's property. As a result of the condemnation action, both
parties introduced expert testimony as to the value of the part of the property being taken as well
as the resulting damage to Chrysler's remaining property. The jury found that Chrysler had been
damaged in the amount of $623,000. The trial court rendered judgment on the verdict. In sixteen
points of error, the State appeals the judgment, primarily complaining about the trial court's
charge to the jury. We will affirm.


DISCUSSION



Limiting Instruction on Community Damages


 In a series of condemnation cases involving the U.S. Highway 183 project, the
State has taken the position that the landowner is attempting to recover statutory condemnation
damages that are non-compensable. See State v. Munday Enterprises, 824 S.W.2d 643, (Tex.
App.--Austin 1992, writ requested); State v. Schmidt, 805 S.W.2d 25 (Tex. App.--Austin 1991,
writ granted). These non-compensable elements generally involve the loss of access to the
landowner's remaining property by the grade elevation necessary for the condemnation project,
the loss of visibility resulting to the remainder property as a result of the elevated roadway, and
the construction disruption and inconvenience that results to the remainder property. We held in
both Schmidt and Munday that while the value of these items are not recoverable as separate items
of damage, evidence of their value is admissible on the question of diminution in the fair market
value of the landowner's remainder property. In the instant cause, the trial was conducted after
we issued our opinion in Schmidt. As a result of the Schmidt opinion, the State adopted a
different trial strategy in this case. It introduced expert testimony that the remainder property had
been damaged by loss of access, loss of visibility, and construction disruption, but joined issue
with the landowner on the amount of damage which had been sustained. Thus, both sides offerred
evidence on the damage to Chrysler's remainder property, the State conceding at trial that the
condemnation project had caused some damage to the remainder property. (1)

 Points of error one through six complain of the trial court's failure to give a
limiting instruction in the court's charge that the jury should not consider any damage to the
remainder property that would be in the category of "community damages." (2)

 Chrysler argues that the trial court did not err in failing to give the requested
instruction in the court's charge because: (1) by sponsoring evidence through its own expert
witness on the so-called Schmidt elements of remainder-property damages, the State waived the
right to request a limiting instruction on the very same elements of damage, and (2) no evidence
of "community damages" was presented that required a limiting instruction. We agree.

 A party must timely object to the admission of evidence in order to complain on
appeal. Tex. R. App. P. 52(a). The State sponsored evidence of these damage elements through
its own expert witness. The law in Texas concerning complaining about one's own evidence is
clear and unambiguous. "A party on appeal should not be heard to complain of the admission of
improper evidence offered by the other side, when he, himself, introduced the same evidence or
evidence of a similar character." McInnes v. Yamaha Motor Corp., U.S.A., 673 S.W.2d 185, 188
(Tex. 1984). The State in essence argues that the trial court erred by failing to instruct the jury
not to consider portions of the State's own evidence and portions of the evidence offered by the
landowner, all of which was received without objection. We reject this argument. Because the
State failed to object and in fact sponsored portions of the allegedly "tainted" evidence, which we
have previously held in Schmidt and Munday to be admissible, the trial court did not err in
refusing to give the State's requested instruction.

 In addition, Chrysler argues that there is no evidence in the record that testimony
was introduced which would justify a limiting instruction on the issue of "community damages." 
Again, we agree. The State refers this Court to some thirty-nine instances in the record where
evidence of community damages was allegedly adduced. Of those, we note that only three
occurred in the jury's presence. Those three instances came late in the cross-examination of the
State's expert witness, Rudy Robinson. In all three instances, Robinson confirmed that those
elements of damage would affect the market value of the remainder property in question. Thus,
we cannot find in this record a single instance where either party sponsored community-damage
testimony. A limiting instruction on the general proscription regarding community damages
would have only served to confuse the jury in this case. The trial court properly refused to grant
the requested instruction. We reiterate our holding in Munday that the term "general community
damages" refers to the community at large and is not limited to other condemnee-landowners of
the project in issue. Munday, 824 S.W.2d at 649. The State's points of error one through six are
overruled.


Single Damage Issue Submission


 Just as in Munday, the trial court submitted this case upon a single broad-form
condemnation-damage issue that required the jury to find the difference in market value between
the whole Chrysler tract as it existed before the condemnation project was initiated and the
remainder property after the condemnation, taking into account the effects of the condemnation
project. (3)
 In points of error twelve and thirteen, the State argues that the trial court erred in
refusing its requested jury issues. The State requested in separate issues one question that would
have required the jury to find the value of the part taken, and then a second question requiring the
jury to determine the decrease, if any, in the before-and-after value of the remainder property. 
The Texas Supreme Court has recently held in a partial-taking case that the submission the State
requested is actually the preferred method. See Westgate Ltd. v. State, 35 Tex. Sup. Ct. J. 1042
(July 1, 1992). We conclude, however, that the trial court's single damage issue does not present
reversible error for the following reasons.

 First, under the evidence presented in this record the State can show no harm from
the submission in question. The evidence from both sides was that Chrysler's remainder property
had been damaged. The only issue in the case was the quantification of that damage coupled with
the value of the part taken. As we observed in Munday,


 In contrasting the two submissions, that of the trial court as given and that of the
State as requested, it is difficult to understand the State's contention that a jury
would reach a different result in either instance. A jury's damage award which
finds the difference between Munday's entire tract before the condemnation as
contrasted with the value of the remainder tract after the condemnation should be
identically the same monetary award as the jury determining separately the value
of the part taken, and then the decrease of the value in the remainder property
before and after the condemnation.

Munday, 824 S.W.2d at 651. Just as in Munday, we hold that the trial court's charge as applied
to the facts of this case did not harm the State.

 Second, the State's requested issues, especially that asking about the damage to the
remainder, are not in substantially correct form. (4) Requested Jury Question No. 2 included the
issue of "community damages," of which there was no evidence in the record. The trial court
correctly refused to submit an issue that was not raised by the evidence and that would be
confusing to the jury. See Hernandez v. Southern Pac. Transp. Co., 641 S.W.2d 947, 953 (Tex.
App.--Corpus Christi 1982, no writ). Accordingly, the State's points of error twelve and thirteen
are overruled.



Burden of Proof


 In points of error seven through eleven, the State contends that the trial court erred
in refusing to submit within the court's charge a requested instruction defining "burden of proof"
and apportioning that burden to Chrysler as the landowner. The trial court instructed the jury that
it was to answer the single damage issue based upon a preponderance of the evidence. The
definition of preponderance of evidence the trial court gave tracks precisely the language
suggested by the state bar committee on pattern jury charges. See 1 State Bar of Texas, Texas
Pattern Jury Charges, P.J.C. 103 (1991). (5)

 The placing of the burden of proof may be accomplished either through a global
admonitory preponderance-of-the-evidence instruction or within each jury question, usually by the
phrase "do you find from a preponderance of the evidence." See Tex. R. Civ. P. 277. The
court's charge in this case employed a global admonitory instruction, which is the preferred
method and is normally used in pattern jury charges. See State Bar of Texas, supra, at
Introduction (5)(f).

 The State would have required the trial court to inform the jury literally that
Chrysler had the burden of proof. While under some circumstances such a request might be
appropriate, those circumstances were not present under the facts of this case. Both sides
conceded that there was some market value to the part of Chrysler's property being condemned
and that there was some damage to Chrysler's remainder property. The trial court correctly
instructed the jury that it was to quantify the damages it found based upon a preponderance of the
evidence. Therefore, in a single-damage-issue submission the trial court appropriately placed the
burden of proof upon the party specifically arguing for a monetary damage amount. As one
leading treatise stated: 

 Although most questions are framed in a way that calls for an
answer of "yes" or "no" or their equivalents, many forms of issues
require a response in some other form--a damages issue calls for an
amount of money. . . . This form of submission is not, in the
ordinary case, subject to an objection that it fails to place the
burden of persuasion or that it places the burden equally on both
parties.



34 Gus M. Hodges & T. Ray Guy, The Jury Charge in Texas Civil Litigation, § 53A (Texas
Practice 2d ed. 1988). Therefore, since the trial court properly included a preponderance-of-the-evidence instruction regarding the single damage issue submitted, the State's points of error seven
through eleven are without merit and are, accordingly, overruled.



Other Points


 In points fourteen and fifteen, the State claims that the verdict was not supported
by sufficient evidence. Both parties called expert witnesses in this case. The State's experts
testified that Chrysler sustained damages in the amount of $150,000; Chrysler's experts testified
to damages in the amount of $750,000. The jury's verdict of $623,000 was within the range of
the testimony and was supported by the evidence in this case. These points are overruled.

 Finally, in point of error sixteen the State claims that all of its points presented
cumulative error. Since we find no error present in the trial below, point of error sixteen is
overruled. We affirm the judgment of the trial court in all respects.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: December 9, 1992

[Publish]
1.   The State's expert witness testified that the value of the part taken plus the damage to the
landowner's remainder property totaled $150,000, while Chrysler's expert witness estimated
the value and damage to the remainder at $750,000.
2.   The requested instruction read as follows:


 You are instructed that in answering Jury Question No. 2, you shall consider an
injury, if any, or benefit, if any, that is peculiar to Chrysler Realty Corporation
and that relates to Chrysler Realty Corporation's ownership, use, or enjoyment of
the subject property, but you may not consider an injury, if any, or benefit, if any,
that Chrysler Realty Corporation experiences in common with the general
community.

3.   The jury issue actually submitted was:


QUESTION



 What is the difference in Fair Market Value between:


 a. The whole Chrysler Realty property, without reference to or consideration of the
condemnation; and


 b. The remainder of the Chrysler Realty property, taking into consideration the effects
of the condemnation.


 Answer in dollars and cents: 

4.   (STATE'S) REQUESTED JURY QUESTION NO. 2



 Excluding increase in value, if any, and decrease in value, if any, by reason of benefits
or injuries received by Chrysler Realty Corporation in common with the community generally
and not peculiar to Chrysler Realty Corporation and connected with its ownership, use and
enjoyment of the particular tract of land across which the strip of land has been condemned,
and taking into consideration the uses to which the strip condemned is to be subjected, what do
you find from a preponderance of the evidence were the damages, if any, to the remainder of
Chrysler Realty Corporation's tract of land, as improved, immediately after the taking of the
strip condemned for highway purposes on March 22, 1990.


 Answer in dollars and cents, if any.


 
5.   The trial court in this case obviously omitted P.J.C.'s recommended language
concerning "yes" or "no" answers since the charge did not contain any "yes" or "no"
questions.