STATE of Texas and City
of Austin, Appellants,

v.

CENTENNIAL MORTGAGE CORPORATION, Successor in Interest to Grand Central Station Shopping Center, Ltd., Appellee.

No. 3–91–099–CV.

Court of Appeals of Texas,
Austin.

Feb. 17, 1993.

Released for Publication Dec. 8, 1993.

Diana L. Granger, City Atty., William T. Deane, Asst. City Atty., Austin, for appellants.

Susan Vincent, Jenkens & Gilchrist, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

This appeal arises from a statutory condemnation case, wherein a portion of the landowner's property was taken for the expansion of U.S. Highway 183. The trial court rendered judgment on the jury's ver-

dict awarding the landowner the value of the part taken as well as damages to the remaining property. The condemnors, State of Texas and City of Austin (collectively, the "State"), appeal, claiming errors in various evidentiary rulings by the court and in the trial court's handling of jury deliberations. We will affirm the judgment of the trial court.

## BACKGROUND

Appellee, Centennial Mortgage Corporation ("Centennial"),[1] owned a large tract of land, improved by a 109,000 square-foot shopping center, located on and with full access to the main travel lanes of U.S. Highway 183 in Austin, Texas. Centennial's property also had access to Peyton Gin Road and Ohlen Road.

The State condemned a 10,433 square-foot parcel of land from the front of Centennial's property for the widening and reconstruction of U.S. Highway 183 into a limited or controlled access freeway with at-grade three-lane frontage roads running both directions and main lanes on pier structures some 32–48 feet above grade in front of the condemned property. The property condemned by the State was necessary for its proposed highway improvement project. The part taken included land used as detention ponds on the shopping-center property. Centennial was required to replace these detention ponds after the condemnation at a cost agreed to by both parties of $110,000.00. Replacement of the detention ponds eliminated approximately 48 parking spaces in Centennial's parking lot.

Centennial presented two appraisal experts who testified as to the market value of the part taken and the damage to the remainder property caused by the condemnation project. This expert opinion testimony was supported by detailed market data that was presented to the jury in both sworn testimony and trial exhibits. These appraisal expert witnesses testified that the decrease in the fair market value of the remainder reflected those attributes of the property that a would-be purchaser would consider. This testimony included, among other things, the cost to cure the lost detention ponds, the decreased visibility and decreased accessibility of the remainder, the increased risk of owning the remainder, and the fact that the remainder would be subjected to a 3– to 5–year construction project and would then be located adjacent to an elevated, limited-access freeway.

The State's lone expert witness testified that the proposed highway improvements and construction project would actually enhance the market value of Centennial's remaining property. Further, there was testimony about the nature and duration of road-construction activities the State planned in front of Centennial's property.

The jury returned a verdict favorable to Centennial, and the State appeals, bringing forth fourteen points of error. In points of error four through thirteen, the State claims that the trial court erred in permitting the introduction of inadmissible testimony. In point of error fourteen, the State complains of the trial court's failure to permit the introduction of certain documentary evidence favorable to the State. And, finally, in points of error one through three, the State contends that certain acts of judicial misconduct deprived it of a fair trial.

## DISCUSSION

### Admissibility of Evidence

■ In a series of condemnation cases involving the U.S. Highway 183 project, the State has taken the position that the landowner is attempting to recover statutory condemnation damages that are non-compensable. *See State v. Munday Enters.*, 824 S.W.2d 643 (Tex.App.—Austin 1992, writ requested); *State v. Schmidt*, 805 S.W.2d 25 (Tex.App.—Austin 1991, writ granted).[2] These non-compensable elements generally involve the loss of access to the landowner's

---

1. Centennial Mortgage Corporation is the successor-in-interest to Grand Central Station Shopping Center, Ltd.

2. *See also* our most recent decision in *Honorable Dan Morales, Attorney General of the State of Texas v. Chrysler Realty*, 843 S.W.2d 275 (Tex. App.—Austin 1992, n.w.h.)

remaining property by the grade elevation necessary for the condemnation project, the loss of visibility resulting to the remainder property as a result of the elevated roadway, and the construction disruption and inconvenience that results to the remainder property. We held in both *Schmidt* and *Munday* that, while the value of these items is not recoverable as a separate item of damage, evidence of their value is admissible on the question of diminution in the fair market value of the landowner's remainder property. *Munday,* 824 S.W.2d at 647; *Schmidt,* 805 S.W.2d at 35. In the instant cause, the trial court permitted the introduction of this type of evidence. We reaffirm our prior holdings that this evidence is admissible on the question of remainder damages. Accordingly, the State's points of error four through thirteen are overruled.

■ In its fourteenth point of error, the State complains that the trial court erred in excluding a time-and-distance study done by one of the State's witnesses. The trial court excluded the proffered exhibit on the basis that it had not been properly identified pursuant to a discovery request from Centennial. The trial court found that, because the State had violated its duty to supplement its answers to Centennial's interrogatories, the evidence should be excluded. *See* Tex.R.Civ.P. 215(5); *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987); *Gutierrez v. Dallas Indep. Sch. Dist.,* 729 S.W.2d 691, 693 (Tex.1987). The proper standard for reviewing the appropriateness of the trial court's admission or exclusion of trial evidence is abuse of discretion. Since there is no showing in the record of any "good cause" for the State's failure to supplement written interrogatories, we are unable to say that the trial court abused its discretion. Accordingly, the State's fourteenth point of error is overruled.

### Jury Deliberations

■ The State's first three points of error involve some unfortunate occurrences after the jury retired to deliberate. As the trial judge and the bailiff were assembling some eighty trial exhibits to send back into the jury room, they determined that one of the exhibits, State's Exhibit Number 4, was missing.[3] At this point, the trial judge summoned trial counsel for all parties to return to the courtroom.

Apparently, counsel for Centennial arrived first and the mystery regarding Centennial's Exhibit Number 40 was clarified when it was discovered that the exhibit had never been formally introduced in evidence. At this juncture, the bailiff took Centennial's exhibits into the jury room.

When the State's counsel arrived, everyone determined that the missing exhibit must have been inadvertently removed by one of the expert witnesses.[4] Upon retrieving the missing exhibit, the State's exhibits were likewise taken into the jury room. From start to finish, according to the notes of the trial judge, the whole incident consumed less than forty-five minutes.

The State moved for a mistrial on the basis that sending Centennial's exhibits into the jury room first constituted an impermissible comment on the weight of the evidence. In overruling the State's motion for mistrial, the trial judge observed, on the record, that at the time the State's exhibits were taken into the jury room, the jury was still assembling the evidence, had requested the use of an easel from the court room, and had not even begun its deliberations.

The State, in three related points of error, alleges misconduct on the part of the trial judge in failing to send all the trial exhibits to the jury simultaneously; in entering the jury room and making an unauthorized determination on the extent of the jury's deliberations; and in communicating with the jury other than in open court. We have examined each of these arguments by the State and find them to be meritless. The record clearly reveals that the trial judge committed no act in violation of the Texas Rules of Civil Procedure, and the State cannot show any

---

3. There was also a problem with Centennial's Exhibit Number 40.

4. Nothing in the record suggests that the missing exhibit was removed through any type of intentional design; the removal was purely the result of an accidental oversight.

harm from any of the conduct alleged. There is no showing in the record of any harm to the State from any actions of the trial judge who, as best we can determine, was making a good faith effort to give both sides the fairest jury trial possible. We overrule the State's points of error one through three.

## CONCLUSION

Finding no error, we affirm the judgment of the trial court in all respects.